# EXHIBIT C

Collateral Pledge and Security Agreement – Fully Signed

# COLLATERAL PLEDGE AND SECURITY AGREEMENT

THIS COLLATERAL PLEDGE AND SECURITY AGREEMENT (this "**Agreement**"), dated as of July 19, 2021 (the "**Effective Date**"), is made by and between NMS SPECIAL OPPORTUNITY FUND, LP, a Delaware limited partnership (the "**Pledgor**"), in favor of NEWPOINT FINANCIAL CORP., a corporation organized and existing under the laws of the State of Wyoming (the "**Secured Party**").

WHEREAS, the parties are entering into that certain NMS Special Opportunity Fund, LP Original Issue Discount Secured Senior US Treasury-Backed Note in the original principal amount of Three Hundred Twenty Five Million US Dollars ($325,000,000.00) (as amended, restated, supplemented, or modified from time to time, the "**Note**") and the Note Issuance Agreement dated as of the date hereof (together, the "**Transaction Documents**");

WHEREAS, as a material inducement for Secured Party to enter into the Transaction Documents, Secured Party is requiring that the Pledgor pledge the Collateral (as defined below), pursuant to and upon the terms and conditions set forth herein; and

WHEREAS, the Pledgor is entering into this Agreement in favor of the Secured Party to secure the payment and performance of the Secured Obligations (as defined below).

NOW, THEREFORE, in consideration of the mutual covenants, terms, and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Incorporation of Recitals; Definitions</u>. The foregoing recitals are hereby incorporated into and made part of this Agreement. Unless otherwise defined herein, terms used herein that are defined in the UCC (as defined below) shall have the meanings assigned to them in the UCC. However, if a term is defined in Article 9 of the UCC differently than in another Article of the UCC, the term has the meaning specified in such Article 9. For purposes of this Agreement, the following terms have the following respective meanings:

(a) Any one or more of the following shall constitute an "**Event of Default**" under this Agreement: (i) the occurrence of an Event of Default (as defined in the Note), (ii) any representation made to Secured Party by the Pledgor having been false or misleading in any material respect when made, and/or (iii) the failure of the Pledgor to perform or observe any of the Pledgor's covenants, liabilities, and/or obligations under this Agreement or the Note.

(b) "**Proceeds**" means "proceeds" as such term is defined in Section 9-102 of the UCC and, in any event, shall include, without limitation, all dividends or other income from the Collateral, collections thereon, or distributions with respect thereto.

(c) "**UCC**" means the Uniform Commercial Code as in effect from time to time in the State of California or, when the laws of any other state govern the method or manner of the perfection or enforcement of any security interest in any of the Collateral (as defined below), the Uniform Commercial Code as in effect from time to time in such state.

(d) "**USTs**" means the United States Treasuries which rights are held by the Pledgor, including without limitation those United States Treasuries described on Exhibit A attached hereto.

2. Pledge. The Pledgor hereby pledges, assign and grants to the Secured Party and hereby creates, a continuing lien and security interest in favor of the Secured Party in and to all of the Pledgor's right, title and interest in and to the following, wherever located, whether now existing or hereafter from time to time arising or acquired (collectively, the "**Collateral**"):

(a) the USTs and all rights appurtenant thereto;

(b) all "accounts," "general intangibles," "instruments," and "investment property" (in each case as defined in the UCC) constituting or relating to the foregoing; and

(c) all Proceeds and products of the foregoing, all books and records relating to the foregoing, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and profits and products of, each of the foregoing (including, without limitation, dividends), and any and all Proceeds of any insurance, indemnity, warranty, or guaranty payable to the Pledgors from time to time with respect to any of the foregoing.

3. Secured Obligations. The Collateral secures the due and prompt payment and performance of:

(a) the obligations of the Pledgor from time to time arising under the Note, this Agreement, each other Transaction Document, or otherwise with respect to the due and prompt payment of (i) the principal of the Note (and all interest thereon as set forth in the Note), when and as due, whether at maturity, by acceleration, upon one or more dates set for prepayment or otherwise and (ii) all other monetary obligations, including fees, costs, attorneys' fees and disbursements, reimbursement obligations, contract causes of action, expenses and indemnities, whether primary, secondary, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, fixed or otherwise (including monetary obligations incurred during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding), of the Pledgor under or in respect of the Note, this Agreement, and/or any other Transaction Document; and

(b) all other covenants, duties, debts, obligations, and liabilities of any kind of the Pledgor under or in respect of the Note, this Agreement, each other Transaction Document, or any other document or other instrument made, delivered, or given in connection with any of the foregoing, in each case whether evidenced by a note or other writing, whether allowed in any bankruptcy, insolvency, receivership, or other similar proceeding, whether arising from an extension of credit, issuance of a letter of credit, acceptance, loan, guaranty, indemnification, or otherwise, and whether primary, secondary, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, fixed or otherwise (all such obligations, covenants, duties, debts, liabilities, sums and expenses set forth in **Section 3** being herein collectively referred to as the "**Secured Obligations**").

4. Perfection of Pledge.

(a) The Pledgor shall, from time to time, as may be required by the Secured Party with respect to all Collateral, immediately take all actions as may be requested by the Secured Party to perfect the security interest of the Secured Party in the Collateral, at the sole cost and expense of the Pledgor.

(b) The Pledgor hereby irrevocably authorize the Secured Party at any time and from time to time to (i) file, without the signature of the Pledgor where permitted by law, in any relevant jurisdiction any and all financing statements, modifications, continuations, and amendments thereto that contain the information required by Article 9 of the UCC of each applicable jurisdiction for the filing of any financing statement, modification, continuation, or amendment relating to the Collateral, (ii) sign any such statement, modification, continuation, or amendment on behalf of the Pledgor if the Secured Party deems such signature necessary or desirable under applicable law, and (iii) file a carbon, photographic, or other reproduction of any financing statement, modification, continuation, or amendment if the Secured Party deems such filing necessary or desirable under applicable law. Upon request by the Secured Party, the Pledgor shall promptly provide to the Secured Party all information required by the Secured Party hereunder.

5. Representations and Warranties. The Pledgor represents and warrants to the Secured Party as follows:

(a) The Pledgor has the rights to the USTs by way of its perfected first priority security interest in the Collateral. Upon the execution and delivery of this Agreement and UCC filings, the Issuer shall have then conferred a perfected security interest to the Secured Party.

(b) The pledge of the Collateral pursuant to this Agreement creates a valid and perfected security interest in the Collateral, securing the payment and performance when due of the Secured Obligations.

(c) The Pledgor has the power, right, and authority to execute and deliver this Agreement and to carry out and perform their obligations hereunder, including, without limitation, to pledge the Collateral pursuant to this Agreement. This Agreement, when executed and delivered by the Pledgor, will constitute a legal, valid, and binding obligation of the Pledgor enforceable against the Pledgor in accordance with its terms.

(d) This Agreement constitutes a legal, valid and binding obligation of the Pledgor enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and subject to equitable principles (regardless of whether enforcement is sought in equity or at law).

(e) Neither the execution and delivery of this Agreement by the Pledgor, nor the performance by the Pledgor of its obligations hereunder violates or will violate any provision of any applicable law or regulation or any order, judgment, writ, award, or decree of any court, arbitrator or governmental authority, domestic or foreign, applicable to the Pledgor or any of its property, or any agreement or instrument to which the Pledgor is party or by which the Pledgor or any of its property is bound.

(f) The execution, delivery and performance by Pledgor of this Agreement and the consummation of the transactions contemplated hereby do not require the consent, notice or other action by any person or entity under any contract to which Pledgor is a party.

(g) The following is a true and complete list of the appropriate filing offices for the UCC-1 financing statements with respect to the Collateral: Secretary of State of the State of California.

(h) Upon the filing of a financing statement with the Secretary of State of the State of California, the Secured Party's security interest in the Collateral will be perfected under applicable law.

6. Further Assurances.

(a) The Pledgor shall, at the Pledgor's own cost and expense, defend title to the Collateral and the lien and security interest of the Secured Party therein against the claim of any person claiming against or through the Pledgor and shall maintain and preserve such perfected first priority lien and security interest for so long as this Agreement shall remain in effect.

(b) The Pledgor agrees that at any time and from time to time, at the expense of the Pledgor, the Pledgor shall promptly execute and deliver all further instruments and documents, obtain such agreements from third parties, and take all further action, that may be necessary or desirable, or that the Secured Party may request, in order to perfect and protect any security interest granted hereby or to enable the Secured Party to exercise and enforce its rights and remedies hereunder or under any other agreement with respect to the Collateral.

7. Transfers and Other Liens. The Pledgor shall not sell, offer to sell, dispose of, convey, assign, or otherwise transfer, grant any option with respect to, restrict, or grant, create, permit, or suffer to exist any mortgage, pledge, lien, security interest, option, right of first offer, encumbrance, or other restriction or limitation of any nature whatsoever, on any of the Collateral or any interest therein except with the prior written consent of the Secured Party.

8. Remedies upon Default. If any Event of Default shall have occurred and be continuing:

(a) The Secured Party may, without any other notice to or demand upon the Pledgor, assert all rights and remedies of a secured party under the UCC or other applicable law, including, without limitation, the right to take possession of, hold, collect, sell, lease, deliver, grant options to purchase or otherwise retain, liquidate or dispose of all or any portion of the Collateral. If notice prior to disposition of the Collateral or any portion thereof is necessary under applicable law, written notice mailed to the Pledgor at its notice address as provided in Section 12 ten days prior to the date of such disposition shall constitute reasonable notice, but notice given in any other reasonable manner shall be sufficient. So long as the sale of the Collateral is made in a commercially reasonable manner, the Secured Party may sell such Collateral on such terms and to such purchaser(s) as the Secured Party in its absolute discretion may choose, without assuming any credit risk and without any obligation to advertise or give notice of any kind other than that necessary under applicable law. Without precluding any other methods of sale, the sale of the Collateral or any portion thereof shall have been made in a commercially reasonable manner if conducted in conformity with reasonable commercial practices of creditors

disposing of similar property. At any sale of the Collateral, if permitted by applicable law, the Secured Party may be the purchaser, licensee, assignee or recipient of the Collateral or any part thereof and shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Collateral sold, assigned or licensed at such sale, to use and apply any of the Secured Obligations as a credit on account of the purchase price of the Collateral or any part thereof payable at such sale. To the extent permitted by applicable law, the Pledgor waives all claims, damages and demands it may acquire against the Secured Party arising out of the exercise by it of any rights hereunder. The Pledgor hereby waives and releases to the fullest extent permitted by law any right or equity of redemption with respect to the Collateral, whether before or after sale hereunder, and all rights, if any, of marshalling the Collateral and any other security for the Secured Obligations or otherwise. At any such sale, unless prohibited by applicable law, the Secured Party or any custodian may bid for and purchase all or any part of the Collateral so sold free from any such right or equity of redemption. Neither the Secured Party nor any custodian shall be liable for failure to collect or realize upon any or all of the Collateral or for any delay in so doing, nor shall it be under any obligation to take any action whatsoever with regard thereto. The Pledgor agrees that it would not be commercially unreasonable for the Secured Party to dispose of the Collateral or any portion thereof by utilizing internet sites that provide for the auction of assets of the type included in the Collateral or that have the reasonable capability of doing so, or that match buyers and sellers of assets. The Secured Party shall not be obligated to clean-up or otherwise prepare the Collateral for sale.

(b) The Secured Party may, without any other notice to or demand upon the Pledgor, assert all rights and remedies of a secured party under the UCC or other applicable law.

(c) All rights of the Pledgor to (i) exercise the voting and other consensual rights that the Pledgor would otherwise be entitled to exercise pursuant to **Section 6(a)** and (ii) receive distributions which the Pledgor would otherwise be entitled to receive and retain pursuant to **Section 6(b)**, shall immediately cease, and all such rights shall thereupon become vested in the Secured Party, which shall have the sole right to exercise such voting and other consensual rights and receive and hold such distributions as Collateral.

(d) Any cash held by the Secured Party as Collateral and all cash Proceeds received by the Secured Party in respect of any sale of, collection from, or other realization upon all or any part of the Collateral shall be applied in whole or in part by the Secured Party to the payment of expenses incurred by the Secured Party in connection with the foregoing or incidental to the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of the Secured Party hereunder, including, but not limited to, reasonable attorneys' fees, and the balance of such proceeds shall be applied or set off against all or any part of the Secured Obligations in such order as the Secured Party shall elect. Any surplus of such cash or cash Proceeds held by the Secured Party and remaining after payment in full of all the Secured Obligations shall be paid over to the Pledgor or to whomsoever may be lawfully entitled to receive such surplus. The Pledgor shall remain liable for any deficiency if such cash and the cash Proceeds of any sale or other realization of the Collateral are insufficient to pay the Secured Obligations and the fees and other charges of any attorneys employed by the Secured Party to collect such deficiency.

9. No Waiver and Cumulative Remedies. The Secured Party shall not by any act, delay, indulgence, omission, or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced to any Event of Default. All rights and remedies herein provided are cumulative and are not exclusive of any rights or remedies provided by under contract, at law, in equity, or otherwise.

10. Entire Agreement; Amendments. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof. None of the terms or provisions of this Agreement may be amended, modified, supplemented, terminated, or waived, and no consent to any departure by the Pledgor therefrom shall be effective unless the same shall be in writing and signed by the Secured Party and the Pledgor, and then such amendment, modification, supplement, waiver, or consent shall be effective only in the specific instance and for the specific purpose for which made or given.

11. Notices. All notices and other communications provided for herein shall be made in writing and mailed by certified or registered mail, delivered by hand or overnight courier service, or sent by facsimile as follows:

| | |
|---|---|
| If to the Secured Party: | Newpoint Financial Corp.<br>100 Pearl Street<br>Hartford, CT 06103<br>Attn: Thi A. H. Nguyen<br>E: clo@newpointfinancialcorp.com<br>Tel: 323-628-8829 |
| With copies to: | Newpoint Financial (Europe) Limited<br>8th Floor<br>17 Bevis Marks<br>London, EC3A 7LN<br>Attn: Constantine Harker<br>E: constantine.harker@newpointeurope.com<br>Tel: 02039833303 |
| If to the Pledgor: | NMS Special Opportunity Fund LP<br>433North Camden Drive, Suite 725<br>Beverly Hills, CA 90210<br>Attention: Legal Dep.<br>E: info@nmscg.com<br>Tel: 310-855-0020 |
| with a copy to: | Withers Bergman LLP<br>1925 Century Park East, Suite 400<br>Los Angeles, CA 90067<br>Attention: Charles Kolstad |

Notices mailed by certified or registered mail or sent by hand or overnight courier service shall be deemed to have been given when received. Notices sent by facsimile during the recipient's normal business hours shall be deemed to have been given when sent (and if sent after normal business hours shall be deemed to have been given at the opening of the recipient's

business on the next business day). Any party hereto may change the address or facsimile number for receipt of communications by giving written notice to the others.

12. Continuing Security Interest; Assignment. This Agreement shall create a continuing first priority lien and security interest in the Collateral and shall (a) remain in full force and effect until indefeasible payment and performance in full of all the Secured Obligations, (b) be binding upon the Pledgor and its successors and permitted assigns, and (c) inure to the benefit of the Secured Party and its successors and assigns. The Pledgor shall not assign or otherwise transfer this Agreement or any of the Pledgor's rights or obligations hereunder without the prior written consent of the Secured Party, which consent may be withheld, conditioned, or delayed in the Secured Party's sole and absolute discretion. Any purported assignment or transfer in violation of the foregoing sentence shall be null and void and shall be of no force or effect.

13. Governing Law; Jurisdiction. This Agreement and any claim, controversy, dispute, or cause of action (whether in contract or tort or otherwise) based upon, arising out of, or relating to this Agreement and/or the transactions contemplated hereby shall be governed by and construed in accordance with the laws of the State of California, without giving effect to the conflicts of law rules and principles thereof.

14. Severability. In the event a court of competent jurisdiction holds that any provision of this Agreement is invalid, illegal, or unenforceable, the other provisions hereof shall not be affected thereby, and it is the intent of the Pledgor and the Secured Party that such affected provision be enforced to the maximum extent permitted by law.

15. Expenses. The Pledgor or an affiliate thereof shall reimburse the Secured Party on demand for any and all costs, fees, and expenses (including, but not limited to, attorneys' costs, fees, and expenses) incurred by the Secured Party in connection with (a) the preparation, negotiation, execution, delivery, administration, and collection of the Note or any Transaction Document, (b) the enforcement or the attempted enforcement of the Secured Party's rights hereunder or thereunder, and (c) any filings which the Secured Party deems, in its sole and absolute discretion, necessary or advisable in connection with the Note or any Transaction Document, including, without limitation, any financing statements required for perfection of a security interest under the Uniform Commercial Code.

16. Opportunity for Representation. Each party hereto acknowledges and agrees that such party (a) has carefully read this Agreement in its entirety, (b) has reviewed this Agreement and the terms and conditions hereof with independent legal counsel of such party's choosing (or has had a reasonable opportunity to consult with independent legal counsel of such party's choosing regarding this Agreement and the terms and conditions hereof), and (c) is knowingly and willingly executing and delivering this Agreement to the other party hereto. Accordingly, the parties hereto do not intend that the presumptions of laws or rules relating to the interpretation of contracts against the drafter of any particular clause should be applied to this Agreement, and each party hereto therefore waives their effects.

17. Counterparts. This Agreement may be executed and/or delivered in multiple counterparts, including by facsimile or email transmission, each of which shall be deemed an original, and all of which together shall constitute the same instrument.

[*remainder of page intentionally left blank; signatures follow*]

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the Effective Date.

**PLEDGOR:**

**NMS Special Opportunity Fund, LP**

By: NMS Capital Management GP, LLC, as general partner of NMS Special Opportunity Fund, LP

By: ______________________
Name: Trevor M. Saliba
Title: Managing Director

**SECURED PARTY:**

**Newpoint Financial Corp.**

By: ______________________
Name: KEITH DAVID BEEKMEYER
Title: CEO.

Exhibit A

| | |
|---|---|
| **ISIN NUMBER:** | US912810AZ49 |
| **CUSIP:** | 912810QZ49 |
| **EUROCLEAR COMMON CODE:** | 0893744677 |
| **INTRUMENT TYPE:** | US TREASURY BOND (30-YEAR) |
| **ISSUE DATE:** | FEB 15, 2013 |
| **MATURITY DATE:** | FEB 15, 2043 |
| **INTEREST RATE:** | 3.125 PER ANNUM (FIXED) |
| **TOTAL PLEDGED AMMOUNT:** | US$ 325 000 000 |